We'll move to our third case, which is United States v. Bennett. Mr. Thiel. Good morning, Your Honors, and may it please the Court. For the next ten minutes, we are going to discuss a matter that is not important simply to my client, Marvin Bennett, but which affects no less than 15 years of the lives of every individual for whom felony resisting arrest in Indiana has been counted as one of the three predicate convictions for the purpose of calling them a violent felon under the Armed Career Criminal Act. It then amounts to literally hundreds, if not thousands, of years that is before the Court at this point. What we're talking about today, of course, and I think this is one thing that the government and I agree on, is whether Indiana Code 354433B1b is either divisible or indivisible under recent rulings of both Mathis and DeChamps from the Supreme Court. And essentially, what that inquiry comes down to is whether the list of alternatives, and in this case there are three, are elements of crimes, and that is, I think, different crimes, which is one of the places where I really think the government and I depart, or whether they are illustrative means for committing the crime. Before we dive into that metaphysical issue, could you explain to us the significance of Mr. Bennett's 11C1C plea and why we should be considering this at all on the merits? Sure. I think that Mr. Bennett was one of a number of people that had his sentence essentially sent back to the District Court by virtue of Johnson. So did we send it back or was it appeal pending? My recollection is that it was sent back by the Seventh Circuit. I could be wrong about that. I did not. I sort of picked this up as kind of the back end of the proceedings, obviously. But my understanding was that indeed he was one of the probably thousands of individuals across the country that had their sentences remanded to the District Court in light of Johnson. Well, go ahead. Sure. That may be, but ordinarily 11C1C pleading pleas are offered, accepted, and that's it, right? That's correct. And we have no idea what might have been behind that bargain, what the government might have given up to make this just one count, for example. And I think it's something to be considered, but again, I think that ultimately what the parties envisioned at the time was a situation where Johnson didn't exist, where essentially you could consider the residual clause of the ACCA in determining whether or not these were crimes of violence. And so at the time that the law existed, there was certainly an understanding that perhaps this crime, and I think it probably would in fact, fall under the residual clause, whereas now it did not. Does Mr. Bennett want to void his guilty plea and the plea agreement? No, Your Honor. We're simply asking for, no, I think we're simply asking for resentencing. I'll be curious about the government's position on this, because he seems to want to, I mean, it's an 11, it's a binding plea agreement to the sentence he got. I understand, but again, I think, and I'll just take this back to sort of general contract terms, I think this was a situation where there was a material part of the deal that the two parties didn't understand, or that has significantly changed in the meantime. And yet he wants to insist that the favorable part to him would be left in effect, right? Yes, I suppose that is, yeah, yes, Your Honor. So why should we do that? That's a good question. I think ultimately, again, well, either way, I think that the outcome is essentially the same. We're certainly happy to entertain a situation where the plea is removed and the parties would go back and essentially renegotiate it again. Having dealt with the United States Attorney in Fort Wayne on this, I doubt very much that the situation would change significantly. We would still be in a situation where the count to which he pled guilty would be the count to which he pled guilty. The argument would then simply be what is the views on this divisibility question in brief. I'd like to ask you something that's a little bit different. Sure. Under the resisting law enforcement statute, the focus here is on B1B, that makes it a felony, and there's focus on whether inflicting bodily injury on or otherwise causing bodily injury to another person qualifies as divisible and qualifies as violent. Is there a mens rea requirement to the bodily injury element? To that particular element, I think certainly it's sort of the classic law school example. If you shoot a bullet into a crowd and it hits someone, I think there is ultimately, yes, a mens rea that would, you have to intend on doing some sort of damage, some sort of bodily injury. Where do you find that element in the statute? I don't believe that it is in the statute. If it's not, then it's not a violent crime, right? It's not a violent felony. That's true, and I think that ultimately, that would make at least one out of the two, or two out of the three alternatives in B1B, then not violent felonies. I mean, I think for the purposes of Mathis, as long as one of them is violent and one of them is non-violent, the situation then Well, I don't see how any of them are violent under Mathis. Drawing a deadly weapon may or may not be a threat, right? And you understand that under Indiana law, a person can be convicted of Class D felony resistance if the officer injures himself, right? Yes, that's correct. How could that possibly be a violent felony? I think that in the context, there are cases in the context of bank robbery under the federal law where I believe that the drawing a weapon, I think, has been found to constitute a violent felony for the purpose of the ACCA. I'm asking, forget about the deadly weapons. Focus on, I thought the, I thought that in this case, the attempt by the government is to put him under the bodily, inflicting bodily injury. I believe that's correct, yes. So, I think the difficulty, though, is that that's sort of a step beyond where we're going, I think, because under Mathis and Deschamps, you can't even look to, and I don't think, I think that's true whether it's adverse or in support of my client. You can't look to the so-called Shepard documents until you get to the point where you answer, is this divisible or is it indivisible? So, I don't know that it necessarily matters for the purposes of the of the test that at least the Supreme Court has announced. We would certainly, I think, prefer under a number of circumstances that indeed what you've said is correct, that we in fact look to the actual crime that was committed and decide whether or not that was a violent felony. What I'm suggesting is that it doesn't matter whether this is divisible or indivisible. I understand. For Mr. Bennett. Which, your Honor, I'm certainly not going to argue that. I would hope not. No. I think my mic just came on. So, I think, you know, ultimately what we have under the Deschamps and Mathis test, and again, perhaps this is unnecessary given Judge Hamilton's astute observation, but you essentially have to look to... I don't claim original credit for it. You essentially have to look to what, both statutory language and how it is interpreted by the individual states, appellate courts, and in this case that would be the Indiana Court of Appeals. And it would be Mr. Bennett's suggestion that both the statutory language, the statutory drafting in this case, as well as the interpretive decisions to the extent that they First point out that all of the three subsections of B1B carry the exact same penalty. These are all D felonies for which the sentence range is the same. Now the government has identified some case law which speaks to mandatory minimums and suspendability in the context of this particular, these particular offenses, namely the bodily injury and the driving portions. However, none of these actually change the sentence. The mandatory minimum and the suspendability, at least under Indiana law, speak not to how long, but how. Indeed, a 30-day mandatory minimum, if you view that as a minimum sentence, makes no sense in the context of a D felony where the minimum sentence is six months. What that's instead saying is that you serve that time, that 30 days, executed rather than suspended or rather than on some sort of alternative sentencing. Therefore, none of the government's arguments with respect to this point are valid or relevant as they apply to Indiana criminal law. Moreover, and I think that this is important because the government in fact identified this case, and that would be Turner v. State, where the Indiana Court of Appeals actually said that the items that make, the various facts that make, I'll finish my point and be done, that the various facts are determined by a judge. They don't need to be determined by a jury. Thus, when the government says that because this is a violent, because inflicting bodily injury might render this non-suspendable, that's the exact opposite of an element. If it can be found by a judge and not by a jury, it's not an element as a matter of law. Thank you, Your Honor. Okay, thank you, Mr. Thiel. Mr. Whalen? Good morning, Your Honors. It may please the Court. My name is Nathaniel Whalen, and I'm here on behalf of the United States. Judge Hamilton, let me get to some of your factual questions first. This case was not pending on appeal. This Court did not send it down at any point. The sentencing was pending at the time Johnson came out. Then this issue got briefed. It was an objection to the PSR. The district court ruled on the objection. In terms of the plea agreement, there is an appellate waiver, which we think does cover the scope of this case. We have waived any reliance on the waiver. I want to ask you about that, though. Your footnote seems to hedge your bets. Your Honor, we are explicitly waiving it in this appeal. For this case? Correct. Because your footnote says, we reserve the right to enforce the waiver in future proceedings in this case. Sure. I wouldn't say we're hedging our bets. I'd say we're covering ourselves. There might be issues down the road that we just can't foresee, not as it relates to Johnson, not as it relates to the ACC. Just could be some other issue down the road that we just can't foresee. Okay, you're not trying to do this as an appeal? Absolutely not, Your Honor. We are saying we're not relying on the waiver for purposes of this appeal. But to address your other question, Judge Hamilton, about whether this is a crime of violence, Mr. Bennett, down below in front of the district court and here, has explicitly waived that argument. Look, you're both waiving things and trying to set this up so that we have to if the person can be convicted because the police officer hurts himself. Sure. Your Honor, I did not research that issue because Mr. Bennett has not raised it. If you look at page 15 of his opening brief, the first two acts listed in this subpart clearly satisfy the force clause and Bennett does not argue otherwise. That is just not an issue that he's raised in front of this court. And I understand the where that issue arises, where this court has to address the issue. Well, it seems like you guys want to pick and choose which issues we have to decide. And given that kind of picking and choosing, my interest is in actually getting the case right. I understand your point, Your Honor. We're not picking and choosing which issues the court has to decide. Mr. Bennett raised... You are, by waiving the entire 11C1C issue. But that's, I don't mean to get personal about it. No, I understand. But is there any mens rea under the bodily injury? Your Honor, I unfortunately am not prepared to talk about that today because I didn't review whether this is a crime of violence or a violent felony under the elements clause. That wasn't an issue. Well, why don't you talk to us about what you did research and brief then. Well, and Your Honor, if I can briefly just address a I understand the court's questions. It relates to whether there's an intent to injure element and a mens rea component. We are dealing with that in the case in front of this court. It's called USB Douglas. It's scheduled for argument. The briefing is still ongoing. It's scheduled for argument May 16th. So if this court, that relates to class C battery resulting in serious bodily injury. That statute does not have an intent to injure element. We think we have strong arguments as to why that is a violent felony. Again, I don't think Mr. Bennett has raised that issue, but if this court does have concerns. What is a violent felony? I'm sorry, in this case, Your Honor, or in the case we're arguing in May? No, in this case. This case, the question is resisting law enforcement by drawing a weapon, causing bodily injury or recklessly driving is a violent felony. Though the He caused bodily injury, Your Honor. He what? He caused bodily injury while resisting law enforcement officers. But he's not arguing that it's a nonviolent felony. His issue is whether the statute is divisible. We think it is. What's the relevance of that? As to whether it's divisible? The relevance to that, We concede that one part of B1B is not a violent felony under the elements clause, and that's when you essentially recklessly drive as you're escaping a police officer. Mr. Bennett concedes the first two parts are violent felonies. And so the question is, can the court look at the charging documents from the state together? Each component does have a different sentencing ramification. That's where we think this analysis can start and end with this court. If you resist law enforcement by drawing a deadly weapon, you're subject to, at the time he violated the statute, your sentence couldn't be suspended. If you resist law enforcement by recklessly driving, you're subject to a 30-day mandatory minimum. The Supreme Court said in Mathis, if you're subject to different To the extent this court has any concerns, though, every single Indiana case we've seen separates them out into different elements, and Mr. Bennett hasn't pointed to any to the contrary. He relies on one case, Arthur v. State, or State v. Arthur, which doesn't even discuss this subsection we're dealing with here. It discusses B1A, it is hardly binding on us. I mean, it may provide guidance, but not binding. Sure, absolutely, Your Honor. But the fact that the courts are unanimous, the Indiana Appellate Courts and Supreme Court, and the fact that they refer to these as different elements in both sufficiency of the evidence and in terms of double jeopardy, we think that resolves the issue. To the extent that there is further concern, what this court can do is what the Supreme Court called is take a dispute that he was charged with causing bodily injury, which he concedes is a crime of violence. If these three items were means rather than elements, how would that affect his sentence? If these three items were means rather than elements, he would not be eligible for the Armed Career Criminal Act, and so instead of the 15-year mandatory minimum, he'd be subject to a 10-year statutory maximum. And why would that be? Because under 924E, Your Honor, if you have three qualifying violent felonies, normally felon in possession of a gun carries a 10-year statutory maximum, but if you have three qualifying violent felonies, it increases the sentencing range to 15 years as a minimum. But that first bodily injury to a police officer, that wouldn't be limited to 10 years, would it? That would be the state qualifying felony, and the question is whether that qualifies under the Armed Career Criminal Act, thereby triggering the enhanced sentence under 924E. Well, if it didn't trigger it, what would be the maximum sentence? 10 years. His federal sentence, his maximum federal sentence would be 10 years. Could you address the defense's point that the different sentencing consequences here are matters left to the judge to decide? Well, Your Honors, whether or not they, first of all, the fact that it calls the 30-day mandatory minimum a mandatory minimum, that is under a lane, something that is an element that has to be proven beyond a reasonable doubt. Whether or not the Indiana courts have come to that conclusion yet. That's correct, Your Honor. That's controlling Supreme Court precedent, as I understand it. But more importantly, what it does is it shows how Indiana treats these different components of B1B. Even if you don't consider these something that has to be proven to the jury, what they are, it's the Indiana legislature's and Indiana court's way of signaling that these are three distinct elements. Unless this court has any more questions on this extremely, I think, metaphysical, as Your Honor called it, issue, we would ask that you affirm the district court. Thank you, Mr. Whalen. Thank you, Your Honors. Mr. Thiel, do you have anything further? Briefly, I want to, again, I think this major issue of when the Indiana Court of Appeals, the Indiana Supreme Court, calls these things elements or when they're charged, does that make them elements for the purposes of Mathis or Deschamps? And the answer is no, and here is why. Mathis and Deschamps don't tell us that simply calling something an element has some sort of magical properties, that it now becomes a divisible statute. What it says is, are they elements of different crimes, one of which is more serious than the other? And that's what's missing from the government's analysis in this case. None of the Indiana cases that they cite stand for the proposition that one can commit one part of B1B and then commit another part of B1B, and those are two different crimes. All they stand for is the fact that particular prosecutors have chosen to add language that they did not need to add to charging information. And to the extent Judge Kain wants Seventh Circuit precedent, look no further than United States v. Edwards, where, again, in that case, we were dealing with the Wisconsin burglary statute. Each and every one of those locational, let's call them alternatives, would be an element of that crime. You would have to prove that one of those was violated. That does not make the statute divisible, as this Court has found. I see my time is up, Your Honor, so thank you very much. Thank you very much. Closed counsel. Next case, United States v. Edwards.